## 1IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00896-SCT

*RICHARD GERALD JORDAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/24/1998 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: DAVID P. VOISIN |
| | ROBERT RYAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L.WHITE, JR. |
| DISTRICT ATTORNEY: | CONO CARANA |
| NATURE OF THE CASE | CIVIL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | LEAVE TO SEEK POST-CONVICTION RELIEF, DENIED - 03/10/2005 |
| MOTION FOR REHEARING: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Once again this Court reviews Richard Gerald Jordan's death penalty case.  Since his conviction in 1976 for the murder of Edwina Marter, Jordan's case has been reviewed a total of six times by various courts, including this Court, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court.

## FACTUAL BACKGROUND

¶2. In January of 1976, Richard Gerald Jordan traveled to Gulfport from Louisiana. He telephoned the Gulf National Bank and asked to speak to a loan officer. After he was told that Charles Marter could assist him, Jordan ended the call and found Marter's Gulfport residence address in the telephone directory. He went to the Marter's residence and, pretending to be an employee of the electric company, gained entrance to the house. He kidnapped Charles's wife, Edwina, forcing her to leave her three-year-old son sleeping alone in the house. Jordan forced Edwina to drive to a deserted area of the DeSoto National Forest.

¶3. Jordan shot Edwina in the back of the head. The defense claimed that Edwina tried to run away and that Jordan attempted to fire a warning shot over her head. The bullet entered her skull at the lower right occipital area of the brain and traveled upward, exiting above her left eye. The State claimed that Jordan executed Edwina by firing one bullet into the back of her head as she knelt in front of him.

¶4. Jordan then disposed of the murder weapon and called Charles Marter, telling him that he had kidnapped Edwina and that she was alive and well. Jordan demanded that Charles leave $25,000 on a blue jacket that he would find on the side of U.S. Highway 49. However, when Charles attempted to leave the money, he did not find the jacket. Jordan called Charles the next day and again demanded the $25,000. He assured Charles that Edwina was fine and that she was concerned for her children. On his second attempt, Charles found the jacket and left the money, as he had been instructed. When Jordan retrieved the money, two officers attempted to arrest him. Jordan escaped but was later captured at a roadblock. He confessed

2

to the crime and told police where to find Edwina's body. He cooperated with the investigating officers, telling them where he had disposed of the gun and showing them where he had hidden the money and his automobile.

¶5.    Jordan was convicted and sentenced to death in 1976. Subsequently, the law pertaining to death penalty proceedings changed, and Jordan's conviction and sentence were vacated. *See Jackson v. State*, 337 So.2d 1242 (Miss. 1976). In 1977, Jordan was retried in a bifurcated trial and was again convicted and sentenced to death. The conviction and sentence was affirmed by this Court in *Jordan v. State*, 365 So. 2d 1198 (Miss. 1978), *cert. denied,* 444 U.S. 885, 100 S. Ct. 175, 62 L. Ed. 2d 114 (1979). *See also In re Jordan*, 390 So. 2d 584 (Miss. 1980) (on petition for writ of error coram nobis).

¶6.    His death sentence was later vacated by the U.S. Court of Appeals for the Fifth Circuit due to unconstitutional penalty-phase instructions. *Jordan v. Watkins*, 681 F.2d 1067 (5th Cir.), *rehearing denied sub nom. Jordan v. Thigpen*, 688 F.2d 395 (5th Cir. 1982). The Fifth Circuit remanded the case for a new sentencing trial.

¶7.    In 1983, Jordan was again sentenced to death and that sentence was affirmed by this Court. *Jordan v. State*, 464 So.2d 475 (Miss. 1985). However, based on its decision in *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986), the Supreme Court vacated Jordan's death sentence.[1] *Jordan v. Mississippi*, 476 U.S. 1101, 106 S. Ct.

---

[1] The trial court's exclusion of the testimony of jailers and visitors in the sentencing phase denied petitioner his right to present all relevant evidence in mitigation. *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986).

1942, 90 L. Ed. 2d 352 (1986). On remand, Jordan entered into an agreement with the State whereby he would forego another sentencing trial and accept a sentence of life imprisonment without parole.

¶8. In 1994, this Court invalidated that agreement, finding that life without parole was not an option under then Miss. Code Ann. § 97-3-21 (1987). Once again Jordan's case was reversed and remanded for another sentencing hearing. *Jordan v. State*, 697 So. 2d 1190 (Miss. 1997). On April 24, 1998, Jordan was again sentenced to death, and this Court affirmed that sentence in 2001. *Jordan v. State*, 786 So.2d 987 (Miss. 2001), *cert. denied*, 534 U.S. 1085, 122 S. Ct. 823, 151 L. Ed. 2d 705 (2002). Jordan is now seeking post-conviction relief and has filed an application for leave to proceed in the trial court and the petition for post-conviction relief. Finding no merit to Jordan's claims, we deny Jordan's application for leave to seek post-conviction relief.

## ANALYSIS

¶9. In the motion for post-conviction relief, Jordan raises thirty claims. We have consolidated those claims below.

### I. Blood Spatter and the "Execution-style" theory

¶10. Jordan raises ten claims that are included under this heading. Broadly stated, Jordan objects to the way in which the State presented its theory that Edwina Marter was killed "execution-style." Jordan's position has always been that he shot Edwina when she suddenly ran away from him. The State refuted Jordan's defense with Officer David Melton who

4

testified that blood spatter patterns at the scene demonstrated Edwina was in a stationary position, standing or kneeling in front of Jordan when she was shot. The State also presented the testimony of forensic pathologist, Dr. William D. Atchison, who opined that Edwina was not running away from Jordan and was, in fact, probably kneeling in front of him.

¶11. As he has in past pleadings, Jordan once again objects to the testimony of Officer David Melton and to Melton's qualifications as an expert witness. Melton testified for the first time in Jordan's 1983 trial and in every subsequent trial. The State correctly points out that the Court has now twice considered David Melton as an expert witness and the evidence regarding blood spatter patterns. In both instances, the Court has denied Jordan relief. In the 1985 direct appeal opinion, we held that Melton was properly qualified to express an opinion regarding blood spatter. *See **Jordan v. State,*** 464 So.2d 475, 484 (Miss. 1985). Again, in the most recent appeal, we held that the trial court properly admitted Melton's testimony. ***Jordan v. State***, 786 So.2d at 1017. The State argues that this claim cannot be re-litigated under the provisions of Miss. Code Ann. § 99-39-21(3). Furthermore, the State points out that any attempt to litigate this claim on a different legal or factual theory than that previously forwarded is barred by the provisions of Miss. Code Ann. § 99-39-21(2).

¶12. We agree that this issue has already been litigated and is now procedurally barred. Jordan is attempting to rephrase the issue as a knowing presentation of false or misleading evidence, but the underlying claim is the same one that has already been addressed and found to have no merit.

5

¶13. Notwithstanding the procedural bar, we will examine the merits of the claim. David Melton had received training in the interpretation of blood stains and could opine with authority about the blood found at the scene. Melton testified that he was employed by the Gulfport Police Department from 1966-1969 and by the Harrison County Sheriff's Department from 1972-1977. He attended the Mississippi State Law Enforcement Training Academy and received training in fingerprints and blood stains. As this Court has already determined, the trial court did not err in allowing Melton's testimony.

¶14. We now also consider the standard to be applied to Jordan's claim that the State knowingly presented false testimony. Jordan asserts that if there is any reasonable likelihood that the allegedly false evidence affected the judgment of the jury, then the defendant is entitled to a new trial. We find that Jordan has not demonstrated a reasonable likelihood that David Melton's testimony on blood spatter evidence resulted in a death sentence where it is undisputed that Jordan was twice convicted and sentenced to death in previous trials in which David Melton did not testify on the issue of blood spatters. We find that the issue is without merit.

¶15. Jordan's next argument is that it is a violation of the law of the case doctrine and the doctrines of collateral and judicial estoppel to allow the State to present evidence that Edwina was killed "execution-style."[2] He argues that at the first two trials, the State acquiesced to his

---

[2]The law of the case doctrine stands for the proposition that whatever was once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. *Mauck v. Columbus Hotel Co.*, 741 So.2d 259, 266-67 (Miss. 1999).

6

account that he shot Edwina when she tried to run away from him. He argues it was error then for the State, in subsequent proceedings, to argue instead that Edwina was kneeling in front of Jordan when she was shot. Jordan cites a number of federal cases for the proposition that pursuing inconsistent theories is cause for reversal. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000); *Drake v. Kemp*, 762 F.2d 1449, 1470-79 (11th Cir. 1985). [3]

¶16. The State argues the evidence that Edwina Marter was killed execution-style was not a new theory. The State attempted to introduce this evidence at the sentencing trial in 1977 and the State used this theory in its re-sentencing of Jordan in 1983.

¶17. We agree with the State and also now find that no objection was raised on this claim at trial or on appeal. Furthermore, Jordan could have and yet failed to raise this issue in previous post-conviction pleadings. Therefore, Jordan's claim that it was a violation of the law of the case doctrine and the doctrines of collateral and equitable estoppel to allow the State to present evidence that Edwina was killed "execution-style" is now procedurally barred by Miss. Code Ann. § 99-39-21.

---

[3]We find those cases distinguishable. In *Smith v. Groose*, the prosecution used two contradictory statements as to when a murder occurred to convict two defendants at separate trials. In *Drake v. Kemp* there were two defendants in two different trials where the prosecution argued different theories to convict each of murder. In *Donnelly v. DeChristoforo*, there were two defendants in joint trials. Prior to the conclusion of the trial, one defendant pled guilty to the murder. In closing arguments as to DeChristoforo the prosecutor remarked about DeChristoforo's motive for continuing to stand trial after his co-defendant pled guilty. The U.S. Supreme Court held that the comment did not render the trial fundamentally unfair and that DeChristoforo was not denied due process.

¶18.     Notwithstanding the procedural bar, we find this issue has no merit.   In the trials prior to 1983, the trial court never held Melton's testimony inadmissible with regard to the substantive content of blood spatter testimony.   Therefore, there was no law of the case as to Melton's testimony established in the 1977 trial. This Court previously held Melton's blood spatter testimony and Dr. Atchison's testimony as to the position of the victim's body to be admissible.   Furthermore, the State was not attempting to relitigate Jordan's conviction, but was introducing evidence of aggravating factors with regard to re-sentencing.

¶19.     Next, Jordan asserts that misconduct by the special prosecutor hampered defense counsel's ability to raise an objection to the State's inconsistent theories and hampered his ability to cross-examine the State's experts about their qualifications and conclusions on the issue of blood spatter evidence.   Jordan asserts that the special prosecutor led defense counsel, Tom Sumrall, to believe that transcripts of prior trials were unavailable for review.   Having failed to review the transcripts of prior trials, it was impossible for the defense attorney to realize that the State was pursuing inconsistent theories in the 1998 re-sentencing trial.   Jordan argues that the State's misleading statements about the availability of the transcripts was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

¶20.     The State correctly points out that all of the transcripts of the earlier proceedings are public records and, as such, were equally available to the State and the defense.   Also the State argues that what Jordan describes would not be a *Brady* violation.

¶21.     In *King v. State*, 656 So.2d 1168 (Miss. 1995), this Court noted:

8

*United States v. Spagnoulo* sets forth a four-prong test to determine whether a *Brady* violation has occurred mandating a new trial. To establish a *Brady* violation a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and, (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992), citing *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989), (cert. denied).

656 So. 2d at 1174. It is well settled that exculpatory evidence in the possession of the prosecution must be turned over to the accused in a criminal proceeding. However, as this Court has held, the prosecution is under no duty to turn over its entire file to the defense. *Boches v. State*, 506 So.2d 254, 563 (Miss. 1987) (citing *Scott v. State*, 359 So.2d 1355, 1361 (Miss. 1978)).

¶22. Furthermore, the affidavit of defense counsel Tom Sumrall filed with Jordan's petition for post-conviction relief does not support the claim that Sumrall was somehow misled as to the existence of transcripts. Sumrall stated he knew that the transcripts generated in previous proceedings were voluminous. He stated he received a box full of transcripts, but then discovered that some were incomplete. He explained he had generous access to the special prosecutor's files and transcripts and was provided with any copies that he wanted. We find this claim is without merit.

¶23. While much time and argument has been expended on the blood spatter evidence, that evidence is only one portion of a larger context of evidence upon which the jury could have sentenced Jordan to death. After a defendant is convicted of a capital offense, the trial court

9

shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment, with or without parole.  Miss. Code Ann. § 99-19-101(1).  Miss. Code Ann. § 99-19-101 provides in pertinent part:

> (3) For the jury to impose a sentence of death, it must unanimously find in writing the following:
>
> (b) That sufficient aggravating circumstances exist as enumerated in subsection (5) of this section; and
>
> (c) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances.

Miss. Code Ann. § 99-19-101 further provides, in pertinent part:

> (5) Aggravating circumstances shall be limited to the following:
>
> (d) The capital offense was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, aircraft piracy, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or felonious abuse and/or battery of a child in violation of subsection (2) of Section 97-5-39, Mississippi Code of 1972, or the unlawful use or detonation of a bomb or explosive device.
> (f) The capital offense was committed for pecuniary gain.
> (h) The capital offense was especially heinous, atrocious or cruel.

Jordan was convicted of capital murder.  In the bifurcated sentencing proceeding and the re-sentencing proceedings, the jury has found sufficient aggravating circumstances to impose the death penalty.  The jury's finding in the most recent trial clearly indicates it found beyond a reasonable doubt that Jordan murdered Edwina; the murder was committed in the commission

10

of a kidnaping; the murder was committed for pecuniary gain; and, it was especially heinous, atrocious and cruel, supported by the fact that she was subjected to the mental torture caused by her abduction from her home where she was forced to leave her three-year old son alone.

¶24. Even if the testimony on the subject of blood spatter patterns were excluded, there were still sufficient proof of aggravating circumstances to support Jordan's death sentence. *See McGilberry v. State*, 843 So.2d 21, 29 (Miss. 2003) (where this Court addressed the aggravating circumstance of whether McGilberry created a great risk of death to many persons and held that "[i]f one aggravator is found to be invalid, we are authorized to re-weigh the remaining aggravators against the mitigating circumstances and affirm, hold the error to be harmless, or remand for a new sentencing hearing. Miss. Code Ann. § 99-19-105(5)(b) (Rev. 2000)."

## II. Ineffective assistance of counsel

### a) Blood spatter

¶25. Jordan raises a number of claims of ineffective assistance of counsel. The first several of those claims are that defense counsel, Tom Sumrall, was ineffective for failing to prepare to rebut Melton's blood spatter testimony, for failing to hire a blood spatter expert to refute Melton's testimony and for failing to object, at trial, to Melton's qualifications as an expert on the subject. Jordan asserts that Sumrall could have and should have contacted Robert McDuff, who represented Jordan from 1988 through 1991, to get McDuff's files on this subject.[4] Jordan

---

[4]Tom Sumrall (defense counsel) provided an affidavit in which he states that had he realized Melton would be testifying as a blood spatter expert, he would have asked for funds

notes that Sumrall failed even to review transcripts of the previous trials, which would have alerted Sumrall to the subject matter of Melton's testimony.

¶26.    The State points out that defense counsel, in 1998, may have been somewhat at a loss to challenge Melton's qualifications where this Court had already found no reversible error in permitting Melton to testify as an expert.  *Jordan v. State*, 464 So.2d at 486.  The State also notes that Jordan had the services of Dr. Leroy Riddick, also a forensic pathologist, to dispute the theory presented by Melton and Dr. Atchison.

¶27.    While we agree that Melton had been found qualified to testify as an expert in Jordan's previous trials, we are troubled by Jordan's defense counsel's confession that he failed to realize that blood spatter evidence would be presented.  Certainly, Sumrall should have realized that such testimony was possible because Melton had testified on the subject in 1983.  We find that Sumrall's performance was deficient on this point.

¶28.    However, the analysis of this issue does not stop there.  Next, we must determine whether that deficient performance prejudiced Jordan's defense.  In this petition, Jordan merely states that it was prejudicial and points out that the blood spatter testimony was central to the State's case.    A meritorious claim of ineffective assistance of counsel requires more than the mere statement that the defendant was prejudiced and requires more than just the petitioner's allegations that this subject matter was central to the State's case.    As we have noted, Jordan was convicted and sentenced to death twice before David Melton's blood spatter testimony was

to hire an independent expert.

12

ever presented to a jury. While the blood spatter testimony is clearly an emotional and highly charged detail of Jordan's trials after 1983, there was enough evidence even without such testimony to convict Jordan twice before.

¶29.    The *Strickland* standard is familiar; whether petitioner was prejudiced by the deficient performance. Prejudice occurs when the defendant shows that "there is a reasonable probability that , but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Jordan's petition fails to meet the *Strickland* standard on the second prong. Jordan's argument that the blood spatter evidence was central to the case is not enough to undermine confidence in the result. This claim is without merit.

### b)  Jury instructions

¶30.    Jordan's next claims of ineffective assistance of counsel pertain to the jury instructions and the form of the verdict. Jordan argues that the jury instructions favored the State's theory and failed to instruct the jury on the defendant's rebuttal of that theory. Jordan also argues, as he has on previous appeals, that the use of the heinous, cruel and atrocious jury instructions improperly allowed the jury an evidentiary short-cut to finding the aggravating circumstances.

¶31.    Jordan cites **Keys v. State**, 635 So.2d 845 (Miss. 1994),[5] in support of the argument that the jury instructions took away the jury's discretion to consider his theory that the murder was not unnecessarily tortuous or physically painful to Edwina, and, therefore, was not heinous, atrocious and cruel.  We do not agree.  In Jordan's case the jury instruction did not take away the discretion of the jury to consider his theory of defense. Instead the instruction set forth the State's theory and provided the basis for finding aggravating circumstance that the murder was heinous, atrocious and cruel.

¶32.    As the State points out, this Court has already addressed the merits of the underlying claims that Jordan now raises under the guise of ineffective assistance of counsel.  *See **Jordan v. State***, 786 So.2d at 1001-04 & 1026. (where this Court addressed the exact issues on jury instructions and found that the instructions were not unconstitutionally vague or over-broad and that the jury's verdict, while not in ideal form, was in sufficient form to indicate the intent of the jury).

¶33.    We find that Jordan's ineffective assistance of counsel claims are based upon claims that have already been raised by Jordan and addressed by this Court.  *See*, **Jordan v. State**, 786 So. 2d 987 (Miss. 2001); **Jordan v. State**, 464 So.2d 475 (Miss. 1985).   Jordan cannot now relitigate these issues under the guise of ineffective assistance of counsel claims.   Furthermore, Jordan cannot demonstrate that his counsel's performance fell below a reasonable professional

---

[5]In **Keys**, the jury was instructed that if it found the defendant had armed himself and confronted the victim, then it could not find the defendant acted in self-defense.

standard and that counsel's performance caused prejudice to his defense where this Court has found the jury instructions proper, the verdict sufficient to indicate the intent of the jury and the evidence sufficient to support the verdict. We find no merit to this claim.

¶34. In a closely related claim, Jordan argues that the trial court erred in accepting the jury's verdict which merely copied verbatim the flawed jury instructions. The jury's verdict, in pertinent part, was as follows:

> Three, Richard Jordan committed a capital offense which was especially heinous, atrocious & cruel & whether the murder was conscienceless and pitiless. In support of the circumstances the State claims that Edwina Marter was murdered in execution style & that she was subjected to extreme mental torture caused by her abduction from the home wherein she was forced to abandon her unattended three-year-old child & removed to a wooded area at which time she was shot in the back of the head by Jordan....

Jordan argues that the verdict was not in substantial compliance with the requirements of the law and was not an intelligent response to the trial court's instructions. Jordan cites *Harrison v. Smith,* 379 So.2d 517, 519 (Miss. 1980), a civil case in which the verdict appeared to find both parties negligent without apportioning fault, and *Stewart v. State*, 662 So.2d 552 (Miss. 1995), a criminal case in which the jury's verdict found the defendant guilty of both capital murder and conspiracy to commit capital murder, rather than guilty of one or the other.

¶35. Miss. Code Ann. § 99-19-9 provides that where there has been substantial compliance with the law, a jury's verdict will not be reversed for mere want of form. Case law instructs that if the jury's intent can be understood in a reasonably clear manner, there has been substantial compliance and there is no error. "[T]he basic test with reference to whether or not a verdict is sufficient as to form is whether or not it is an intelligent answer to the issues submitted to

15

the jury and expressed so that the intent of the jury can be understood by the court." *Miss. Valley Gas Co. v. Estate of Walker*, 725 So.2d 139, 151 (Miss. 1998); *Harrison v. Smith*, 379 So.2d 517, 519 (Miss. 1980) (quoting *Henson Ford, Inc. v. Crews*, 249 Miss. 45, 160 So.2d 81, 85 (1964)). In *Cole v. State*, 756 So.2d 12 (Miss. Ct. App. 1999), the Court of Appeals found that a verdict with misspellings and unusual abbreviations was not so unclear as to be reversible error. We find that the jury's verdict in the present case can be understood in a reasonably clear manner and, as such, will not be reversed just because it is a poor translation of the jury instruction(s). It was not deficient performance on the defense counsel's part to fail to object to the form of this verdict.

¶36. Jordan also argues that defense counsel was ineffective for failing to object because the especially heinous aggravator "doubled up" with the kidnapping aggravator. He argues that in explaining "especially heinous" the trial court explicitly referred to the extreme mental torture caused by the abduction from her home, and that this made the especially heinous aggravator duplicative of the kidnapping aggravator.

¶37. This Court has already addressed and decided this underlying claim. In the 2001 *Jordan* opinion, the Court stated:

> The two aggravating factors of kidnapping and heinousness are not "doubled up" in the case at hand. Jordan could have kidnapped Edwina without the crime being heinous. He could have allowed Edwina to secure the safety of her child. He did not have to kill her in the cold and inhumane way he did. After he received his ransom, he could have returned her to her family, physically unharmed. This claim is without merit.

786 So. 2d. at 1005. Likewise, we now find this claim under the heading of ineffective assistance of counsel to be without merit.

¶38. Finally, Jordan argues that defense counsel should have objected to the special prosecutor's remarks during closing arguments. Those remarks pertained to the privileges that Jordan enjoyed, and might continue to enjoy, at the state penitentiary at Parchman and on Jordan's having used and misused the judicial system. Other remarks included the prosecutor's referring to Jordan as a scam artist or con man.

¶39. The State argues that, because this Court held the underlying substantive claims to be without merit, Jordan cannot now sustain a claim of ineffective assistance of counsel because he cannot show deficient performance and actual prejudice.

¶40. We agree with the State. In the 2001 opinion, the Court found, first, that Jordan's counsel did make two contemporaneous objections which were overruled. Secondly, the Court found that Jordan himself had already introduced some of the same facts regarding his activities and conduct at Parchman into evidence and that the remarks did not unduly prejudice the jury against Jordan. This claim of ineffective assistance is without merit.

### c) Mental Health Examination

¶41. Jordan makes several claims of error pertaining to the mental health examination conducted by Dr. Henry Maggio prior to Jordan's 1998 re-sentencing. The basis of Jordan's first claim is that Dr. Maggio was given a copy of a report of a previous mental health

examination conducted by Dr. Clifton Davis. Jordan argues that Dr. Davis' report contained materially false information and that the State was aware that the information was false.[6]

¶42. At the 1998 re-sentencing trial the defense opted not to call Dr. Maggio as a witness because his report was unfavorable to Jordan. However, the State had a copy of Dr. Maggio's report and used information from that report to cross-examine a key mitigation witness. Jordan argues that it was improper for the State to use the report to impeach defense witnesses because the report was based on erroneous information and, therefore, unreliable.

¶43. The State points out that it was Jordan who requested both of the mental health examinations and that it was the trial court which ordered that Dr. Maggio be given a copy of Dr. Davis' earlier report. The State committed no error in complying with the court's order.

¶44. In the most recent opinion, this Court examined a related version of this issue and thoroughly examined Jordan's constitutional claims. The Court found no error in the State's impeachment of Jordan's mitigation witness with information from Dr. Maggio's report where the report was never introduced into evidence or read to the jury. Furthermore, as we held before, the State was within its rights to use Dr. Maggio's report to impeach the mitigation witness as to veracity, credibility and his knowledge of the defendant when that witness' testimony directly contradicted information contained in Dr. Maggio's report.

¶45. The materially false information about which Jordan complains is the statement in Dr. Davis' report that Jordan was dishonorably discharged from the Army. Jordan includes evidence

---

[6] The materially false information of which Jordan complains is a statement in the report that notes that Jordan was dishonorably discharged from the Army.

18

that he was honorably discharged. From the record, we find little explanation for this error in the report. The report states that Jordan told Dr. Davis he had been dishonorably discharged. Jordan also admits that the information could have been entered incorrectly in the report. There was much more information in both Dr. Davis's report and Dr. Maggio's report that Jordan does not challenge as untrue. The majority of the information used for impeaching Jordan's witness had absolutely nothing to do with Jordan's discharge from the Army, honorable or otherwise. Jordan cites *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L. Ed. 2d 342 (1976), for the longstanding proposition that the State has a responsibility not to present false or misleading evidence. *Agurs* involved undisclosed evidence that the murder victim had prior convictions for violent crimes. The case sets out the U.S. Supreme Court's standard for judging the materiality of undisclosed or false evidence.

> The proper standard of materiality of undisclosed evidence, and the standard applied by the trial judge in this case, is that if the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist, constitutional error has been committed.

96 S. Ct. at 2401-02. The misinformation of which Jordan complains was not material. Furthermore, it was not a denial of Jordan's constitutional rights for the special prosecutor to supply a copy of the earlier mental health evaluation to Dr. Maggio. Therefore, this claim is without merit.

¶46. Next, Jordan asserts that trial counsel was ineffective for failing to inspect the files of the special prosecutor and/or the files of prior defense counsel, in which case he would have found that Dr. Davis' report contained inaccurate information as to Jordan's discharge from the

19

Army. Jordan also asserts that trial counsel had an obligation to ensure that the court-appointed psychiatrist conducted an evaluation consistent with accepted practice.

¶47.    As the State points out Dr. Maggio's report does in fact note that Jordan himself explained he had been *honorably* discharged from the Army. Dr. Maggio was made aware of the discrepancy during his own examination of Jordan. Jordan suffered no prejudice from the discrepancy between the two mental health reports and he has not demonstrated that trial counsel was ineffective for failing to object to Dr. Maggio's report. **Strickland,** *supra.* Therefore, this issue has no merit.

¶48.    Next, Jordan asserts that he did not give a knowing and intelligent waiver prior to cooperating with Dr. Maggio. He argues that he was never informed that anything he said to the mental health examiners could be used against him by the State to secure a death sentence. Jordan continues that had he known that Dr. Maggio's report was going to be sent to the prosecutor, he would not have cooperated with the doctor in the evaluation.

¶49.    This Court has already addressed similar issues related to Dr. Maggio's evaluation in its most recent opinion. **Jordan v. State,** 786 So.2d at 1006-10. This claim is procedurally barred pursuant to Miss. Code Ann. § 99-39-21.

¶50.    However, we will examine the merits of Jordan's claim. Jordan specifically complains that he was not aware that anything he said to Dr. Maggio could be used against him and that because he was not aware of this, he could not have given a knowing and intelligent waiver with respect to the use of those statements at the sentencing proceedings. Jordan cites **Estelle v. Smith**, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), and **Gardner v. Johnson**, 247

20

F.3d 551 (5th Cir. 2001). [7]  *Estelle v. Smith* provides that the Fifth and Sixth Amendments require that a defendant be fully apprised, prior to examination, that what he says might be used against him for sentencing purposes.

¶51.    There are distinctions between Jordan's claim and the cases he cites.  In *Estelle v. Smith*, the mental health examination was a court-ordered examination and the defense counsel was not aware of the scope of the examination or notified prior to the sentencing trial that the report would be used against the defendant.  Likewise, in *Gardner*  the mental health examination was a court-ordered exam and counsel was not aware that it would be used against the defendant during the sentencing phase.

¶52.    In the most recent resentencing trial in this case, it was the defense who requested Jordan be given a mental health evaluation for the purposes of exploring whether Jordan suffered from post-traumatic stress syndrome, for purposes of mitigation.   Because Jordan's counsel requested the psychiatric examination, he was well aware, and even intended, that statements he gave be used at the resentencing trial.   Furthermore, because Dr. Maggio was appointed upon the defendant's request, he was not a "state actor" for purposes of an *Estelle v. Smith* warning.   This Court addressed a similar claim in which a defendant asserted that he was not given adequate warnings.  *See Cole v. State*, 666 So.2d 767, 780 (Miss. 1995) (the expert

---

[7]As *Estelle v. Smith* teaches, the Fifth Amendment requires that the defendant in a capital trial who is subjected to a court-ordered psychiatric examination be informed that he is free to refuse to participate in that examination because its results can be used against him at the sentencing phase of the trial to secure the death penalty. *Gardner*, 247 F.3d at 563.

appointed by the court at the defendant's request was not a "state actor" associated with the prosecution).

¶53.   As has already been noted, Dr. Maggio's report was not put in evidence nor was it read to the jury.   It was used by the prosecution to impeach a mitigation witness who testified that he had known Jordan for many years, that he trusted him and thought him to be a good man.   The prosecutor had the witness silently read portions of Dr. Maggio's report that included information that Jordan embezzled money from his employer, joined the Army to avoid prosecution, was convicted in a military court-martial proceeding and spent time in a federal prison.

¶54.   The warnings were not warranted in the instant case.   However, even if it was error not to give the warning, the error was harmless.   This claim is without merit.

¶55.   Next, Jordan asserts that trial counsel should have objected to the appointment of Dr. Maggio and should have requested appointment of a psychologist.   As we have held, a defendant is not entitled to a psychiatrist or psychologist of his choice, but only has the right to a competent one.   *Manning v. State*, 726 So.2d 1152, 1190-91 (Miss. 1998); *Woodward v. State*, 726 So.2d 524, 528-29 (Miss. 1997); *Butler v. State*, 608 So.2d 314, 321 (Miss. 1992); *Willie v. State*, 585 So.2d 660, 671 (Miss. 1991).   Jordan cannot demonstrate that his trial counsel was deficient or any resulting prejudice from mere undeveloped assertions that another expert would have been beneficial.   *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Burns v. State*, 729 So.2d 203, 223-24 (Miss. 1998).

22

¶56.    Jordan provides nothing to show what prejudice arose from trial counsel's failure to pursue another or a different mental health expert.    Therefore, Jordan fails to meet the ineffective assistance of counsel standard set forth in *Strickland v. Washington, supra*.

¶57.    Jordan asserts that he was denied his right to a mental health examination because Dr. Maggio's evaluation was deficient. Jordan asserts that it is widely known in the defense community that Dr. Maggio's evaluations are cursory at best. Jordan also argue that Dr. Maggio did not use accepted criteria to diagnose antisocial personality disorder.

¶58.    We find this claim is procedurally barred for failure to object at trial or raise this issue on direct appeal.  *Brown v. State*, 798 So.2d 481, 491 (Miss. 2001); *Wiley v. State*, 750 So.2d 1193, 1208 (Miss. 1999); *Foster v. State*, 687 So.2d 1124, 1138 (Miss. 1996).

¶59.    Notwithstanding the procedural bar, this Court has long recognized Dr. Maggio's qualifications and acceptance as an expert in the field of psychiatry.  A defendant is not entitled to a favorable mental health evaluation, but is instead entitled to a competent psychiatrist and an appropriate examination.   *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985);  *Jackson v. State,* 860 So.2d 653, 669 (Miss. 2003).   This claim is without merit.

### III.    Jury Instructions

¶60.    Jordan asserts that the heinous, cruel and atrocious jury instructions were improper because the aggravating factors were not defined with any specificity and that this created an evidentiary shortcut for the jury.   He argues that the jury was instructed that if they found that the killing was committed execution style, then they should find the aggravating circumstance and use it when determining whether Jordan should live or die.  Jordan cites *Taylor v. State*, 672

23

So.2d 1246, 1275-76 (Miss. 1996). In *Taylor*, the Court found that an instruction which informed the jury that the death penalty may be imposed if they found the murder to be especially heinous, atrocious and cruel was improperly presented to the jury because there was no evidence before the jury of how the murder was committed. There was evidence that the victim was strangled and there was testimony that strangulation is a painful and slow way to die, but no specific evidence of how this strangulation was especially heinous, atrocious and cruel.

¶61. The subject of this claim is the court's instruction to the jury at the conclusion of the penalty phase of Jordan's trial. Instruction number one advised the jury as follows with respect to the especially heinous, atrocious and cruel aggravating circumstance:

> Whether Richard Jordan committed a capital offense which was especially heinous, atrocious and cruel and whether the murder was conscienceless and pitiless. In support of this circumstance, the State claims that Edwina Marter was murdered in execution style and that she was subjected to the extreme mental torture caused by her abduction from the home wherein she was forced to abandon her unattended three year old child and removed to a wooded area at which time she was shot in the back of the head by Jordan.

¶62. This argument has already been litigated and decided against Jordan and is now procedurally barred under the provisions of Miss. Code Ann. § 99-39-21(3). *See Jordan v. State,* 786 So.2d at 1002-03.

¶63. Notwithstanding the procedural bar, we find there was sufficient evidence to support the jury instruction. This Court has found sufficient evidence to support a heinous, cruel and atrocious jury instruction in a factually similar case. In *Woodward v. State*, 726 So.2d 524 (Miss. 1997), Woodward objected to a similar instruction, arguing that because he shot the victim in the back of the head, killing her instantly, the murder was not heinous, cruel or

24

atrocious. We disagreed and, looking to the facts of that case, found that the victim was abducted from her car in broad daylight, forced into the defendant's truck and driven to a wooded area where she was forced to her knees and made to perform fellatio on the defendant. She was then raped, and as she tried to gather her belongings, Woodward shot her in the back of the head. Woodward then went back and finished out his day cutting and hauling pulpwood. The Court stated that clearly the abduction and rape of the victim was heinous, atrocious and cruel and the fact that Woodward returned to his job demonstrates that the crime was conscienceless and pitiless. *Id.* at 538-39.

¶64. In the present case, as has been stated above, Jordan abducted Edwina from her home in broad daylight, forcing her to leave her three-year-old son sleeping alone in the house. He forced her to drive to a wooded area on the pretext that he was going to deliver her to his partner while he retrieved ransom money from her husband. Upon arriving at the wooded area Edwina, undoubtedly, realized that there was no "partner" waiting for Jordan. Jordan shot her in the back of the head and then drove back into town and continued with his plan to extort money from Charles Marter, where for two days he led Charles to believe that his wife was alive and well.

¶65. There was sufficient evidence for the jury to find that Edwina's murder was heinous, atrocious, cruel, conscienceless and pitiless. There was no unconstitutional burden-shifting in the jury instructions or evidentiary shortcuts for the jury. Nor were the instructions unconstitutionally vague or overly broad. The instructions properly limits the jury's discretion, advising them that they may find the aggravating factor only if they find that Jordan "utilized a

25

method of killing that inflicted physical or mental pain upon Edwina Marter before her death, that there was mental torture and aggravation before death." This claim is without merit.

¶66. Next, Jordan argues that the jury instructions improperly instructed the jury to disregard sympathy. Jordan asserts that the defense counsel was ineffective for failing to object to the following instruction:

> You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

This is exactly the jury instruction that has long been approved by this Court as a proper statement of law. However, Jordan argues that there is an intervening case in which this Court held that sympathy is a proper consideration for the jury. *King v. State*, 784 So.2d 884 (Miss. 2001). The facts in *King* are distinguishable from Jordan's case. In *King*, the trial court instructed the jury from the bench to totally disregard sympathy. *King*, 784 So.2d at 889-90.

This Court has approved the very instruction given to Jordan's jury and has held that the jury instruction does not inform the jury that they must disregard in toto sympathy. This claim has no merit.

¶67. Jordan also argues that the jury should have been given a "catch-all" instruction as to the fact that they should consider and weigh all of the evidence in mitigation of punishment. Jordan has presented this argument before on direct appeal and now raises it as an ineffective assistance of counsel claim. This claim is therefore procedurally barred. Notwithstanding the procedural bar, we will once again discuss the merits of this claim.

26

¶68. At trial, Jordan presented testimony from family members that he was a good father and son and had a good reputation and had served his country in Vietnam. Jordan also presented testimony that he was a model prisoner and had been productive while incarcerated. He asserts that the jury should have been instructed on how to consider the non-statutory mitigating factors that were presented. He cites *Jackson v. State*, 684 So.2d 1213, 1238 (Miss. 1996), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, Fl L. Ed. 2d 1 (1982), to support his assertion. Both of these cases stand for the proposition that a defendant is entitled to present almost unlimited mitigating evidence.

¶69. This Court has often approved the use of a catch-all instruction as to the jury's consideration of mitigating evidence in a sentencing trial. *Wiley v. State*, 750 So.2d 1193, 1204 (Miss. 1999) (quoting *Jackson v. State*, 684 So.2d at 1213, 1238 (Miss. 1996)). In *Scott v. State*, 878 So.2d 933 (Miss. 2004), the Court approved the following instruction.

> Consider the following elements of mitigation in determining whether the death penalty should not be imposed: Any matter--any other aspect of the defendant's character or record, any other circumstances of the offense brought to you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the defendant.

*Id.* at 983.

¶70. Also in *Scott v. State*, the Court reiterated that when considering a challenge to a jury instruction on appeal, the jury instructions are not viewed in isolation, but read as a whole to determine if the jury was properly instructed. *Id.* at 966; *Burton ex rel. Bradford v. Barnett*, 615 So.2d 580, 583 (Miss. 1993). Similarly, this Court has stated that "[i]n determining whether

27

error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So.2d 777, 782 (Miss. 1997) (quoting *Collins v. State*, 691 So.2d 918 (Miss. 1997)). In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results. *Scott v. State*, 878 So.2d 933 (Miss. 2004) (citing *Milano v. State*, 790 So.2d 179, 184 (Miss. 2001)). *See Austin v. State*, 784 So.2d 186, 193 (Miss. 2001). *See also Agnew v. State*, 783 So.2d 699, 701 (Miss. 2001).

¶71.    In Jordan's sentencing trial, the instructions clearly advised the jury it could consider any other matter brought up during the trial as mitigating evidence.   Sentencing instruction No. 1 advised the jury that "in reaching your decision, you may objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself."    Sentencing instruction No. 3 advised the jury that the sworn testimony that was read from the witness stand was entitled to the same consideration and should be judged as to the credibility and weighed just as live testimony is considered.[8] Sentencing instruction No. S-5 explains that the jury must apply reasoned judgment in light of the totality of the circumstance.    Sentencing instruction No. D-3 instructs the jury that each individual must evaluate the evidence in mitigation and weigh each mitigation circumstance in the balance.

---

[8]This goes specifically to the mitigation testimony of Jordan's parents who were deceased at the time of the 1998 trial.

28

¶72. Even though the jury did not get a standard catch-all instruction like this Court approved in *Scott*, taking the instructions as a whole, the jury was instructed that it should consider and weigh all of the evidence in mitigation of punishment. This claim is without merit.

### IV. Due Process and Other Constitutional Claims

¶73. Jordan argues that of all the inmates sentenced to death prior to the change of law announced in *Jackson v. State*, 337 So.2d 1242 (Miss. 1976), he is the only one who remains on death row. All the other ultimately received a life sentence. Jordan also argues that, like him, several death row inmates entered into sentencing agreements whereby they agreed not to seek parole in exchange for the State not seeking the death penalty. He asserts that none of those other inmates were re-sentenced to death following this Court's decisions to void those agreements. Jordan also argues that his exemplary record while in prison and evidence of changed character entitles him to post-conviction relief.

¶74. The State points out that Jordan raised this same argument in his most recent direct appeal and that this Court denied relief. *Jordan v. State*, 786 So.2d at 1030. Therefore, this claim is barred by the doctrine of res judicata under the provisions of Miss. Code Ann. § 99-39-21(3).

¶75. Notwithstanding the procedural bar, it is suggested that Jordan's equal protection argument fails. He does not raise specific details of his own re-sentencing that demonstrate discrimination. He is not challenging a specific law or statute, nor is he asserting that he is a member of a class to which the death penalty is unfairly imposed. Instead, he is arguing that he is entitled to post-conviction relief because other inmates, once on death row, have been

29

resentenced to life in prison. This Court has held that "...a defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination.""" *Scott v. State*, 878 So.2d at 993 (citing *Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967)). Likewise, Jordan must prove the purposeful discrimination "had a discriminatory effect" on him and the decision-makers in his case acted with discriminatory purpose. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *Scott v. State*, 878 So.2d at 993.

¶76. Jordan offers no evidence specific to his own case that would support an inference that the decision-makers acted with a discriminatory purpose. He asserts only that because others have been given life sentences, he should be given a life sentence. Jordan does not meet the burden of proving an equal protection violation. Therefore, this claim is without merit.

¶77. Next, Jordan argues that it was error to allow the special prosecutor to prosecute this case. He argues that the special prosecutor was not a disinterested prosecutor, rather the prosecutor had a personal vendetta against him. This claim has already been litigated and is now procedurally barred pursuant to § 99-39-21(3). As to the merits of this claim, we noted in Jordan's most recent direct appeal, the Fifth Circuit has ruled that, where special prosecutors are appointed, district attorneys must "retain control of the prosecution." *Faulder v. Johnson*, 81 F.3d 515, 517 (5th Cir. 1996). In this petition as on direct appeal, Jordan fails to offer any proof that the Harrison County District Attorney's Office did not retain control over the prosecution of this case. We have already found that during most of the pre-trial hearings and at trial, the District Attorney himself or one of his assistants was always present with the special

30

prosecutor. *Jordan v. State*, 786 So.2d at 1030. Likewise, Jordan fails to demonstrate the "prosecutorial vindictiveness" about which he complains. This claim has no merit.

¶78. Jordan argues that after four reversals of his death sentence and the passage of so many years since the crime was committed, he has been denied the ability to present a comprehensive case in mitigation. Specifically, Jordan points out that his parents are now deceased and he was denied the important emotional impact of their testimony in the sentencing trial. Jordan cites cases dealing with the importance of presenting all relevant mitigating evidence and the right to compel the attendance of favorable witnesses. *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988); *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978); *Jurek v. Texas*, 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976); *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Davis v. State*, 512 So.2d 1291, 1293 (Miss. 1987); *Leatherwood v. State*, 435 So.2d 645, 650 (Miss. 1983).

¶79. The State argues that despite the passage of so much time and the death of Jordan's parents, trial counsel has been able to present all available mitigating evidence. Transcripts of prior testimony are available and have been read in the subsequent proceedings where live testimony is not available.

¶80. Jordan has had the benefit of all of the mitigating evidence that was available the first time he was convicted and sentenced to death. Although, the form of some of the evidence is not the same as it was in the original presentation, it is still available and has been utilized to the best extent possible by defense counsel. Likewise, Jordan was convicted and sentenced to death in his very first trial in 1976 when, ostensibly, all of his mitigation witnesses were alive

31

and well. Therefore, we find that Jordan fails to demonstrate any actual prejudice from the unavailability of his parents' live testimony. This claim has no merit.

¶81. Next, Jordan asserts that a statement given to Officer Albritton should have been excluded because it was given after Jordan's arraignment proceedings in which he asked that an attorney be appointed to represent him. Jordan cites *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L. Ed. 2d 631 (1986), which held that if police initiate interrogation after defendant's assertion, at arraignment or similar proceedings, of his right to counsel, any waiver of defendant's right to counsel for that police-initiated interrogation is invalid.

¶82. Jordan has challenged the admissibility of this same statement from the very beginning of this long series of appeals. Both this Court and the federal courts have found this claim to be without merit. In this Court's most recent opinion, in 2001, we expressly considered the *Michigan v. Jackson* decision and decided that the issue of whether the tape recorded statement given to Officer Albritton, post-arraignment and without appointed counsel present, was without merit.

> Despite his allegations that his case is not yet final, Jordan has received four appellate reviews of this issue, and we have now twice decided that the issue is procedurally barred. Most importantly, the issue is harmless error at best. Our initial decision on this issue showed the admission of that statement to Officer Allbritton was harmless since it was merely cumulative of the properly obtained statement that Jordan gave to FBI Agent Watts. *Jordan*, 365 So.2d at 1203.

*Jordan v. State*, 786 So.2d at 1020.

¶83. Lastly, Jordan simply says that in light of the cumulative effect of the errors, he is entitled to post-conviction relief.

¶84.    Where there are no individual errors, there can be no cumulative error. ***Foster v. State,*** 639 So.2d 1263, 1303 (Miss. 1994). This Court has previously recognized that "[w]here there is no reversible error in any part, .... there is no reversible error to the whole." ***Doss v. State***, 709 So.2d 369, 401 (Miss. 1996) (quoting ***McFee v. State***, 511 So.2d 130, 136 (Miss. 1987). This Court has further noted, "A criminal defendant is not entitled to a perfect trial, only a fair trial." ***McGilberry v. State***, 741 So.2d 894, 924 (Miss. 1999), citing ***Sand v. State***, 467 So.2d 907, 911 (Miss. 1985). The record indicates that Jordan received a fair trial. This issue is without merit.

## CONCLUSION

¶85.    We deny Jordan's application for leave to file a petition for post-conviction relief in the trial court.

¶86.    **LEAVE TO SEEK POST-CONVICTION RELIEF, DENIED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**