# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-01214-SCT

*ALBERTO JULIO GARCIA*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/14/2021 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| TRIAL COURT ATTORNEYS: | SCOTT A. C. JOHNSON |
| | JOEL SMITH |
| | WILLIAM CROSBY PARKER |
| | CAMERON LEIGH BENTON |
| | ALEXANDER DUNLAP MOORHEAD |
| | KASSOFF |
| | GREG RICHARD SPORE |
| | ALLISON KAY HARTMAN |
| | CAROL RENE' CAMP |
| | BRAD ALAN SMITH |
| | ANGELA BROUN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION |
| | COUNSEL |
| | BY:  SUE ANN WERRE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  ASHLEY LAUREN SULSER |
| | BRAD ALAN SMITH |
| | LADONNA C. HOLLAND |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | AFFIRMED - 06/01/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Alberto Garcia confessed to savagely raping a five-year-old girl and leaving her lifeless body, hanged by the neck, in a filthy trailer. He pled guilty to capital murder. And he waived his right to appeal his conviction. He also waived his right to jury sentencing. The trial judge sentenced him to death. Garcia appealed his sentence, and this Court affirmed. *Garcia v. State (Garcia I)*, 300 So. 3d 945 (Miss. 2020).

¶2. Garcia has also filed two separate petitions for post-conviction relief (PCR). He filed one PCR petition in the trial court seeking to set aside his guilty plea. He filed the other PCR petition with this Court seeking to set aside his death sentence. Recently, this Court denied the petition aimed at his death sentence. *Garcia v. State (Garcia III)*, 356 So. 3d 101 (Miss. 2023). And the trial court denied Garcia's petition aimed at his guilty plea. This appeal is from the trial court's denial of Garcia's guilty-plea PCR.

¶3. In his petition, Garcia contended his mental-health issues—in particular his new-claimed suffering from autism—rendered him incompetent and unable to plead guilty voluntarily. He also suggested his trial counsel was ineffective for not ensuring his psychological expert was sufficiently independent and for encouraging him to plead guilty. The trial court carefully reviewed Garcia's petition and the underlying trial record. Following a hearing, the court issued a lengthy order explaining why Garcia had failed to sufficiently show he was entitled to post-conviction relief.

¶4. On appeal, Garcia has similarly failed to show that the trial court reversibly erred by denying his PCR petition. The gist of his appeal is that the trial court should have relied on experts he retained *post-conviction*, who opined Garcia could not have voluntarily pled guilty

2

due to autism. Garcia claims the trial court reversibly erred by not relying on these new experts and instead continuing to rely on his trial expert—an expert whose methodology and assistance Garcia now calls into question.

¶5.     This Court has acknowledged that no psychological expert's "methodology, approach, or understanding of [an] issue is infallible."[1]  And while expert opinions may be "helpful and insightful," they do not control ultimate legal determinations.[2]  In other words, the trial court's conclusion that Garcia had been competent and had voluntarily pleaded guilty is not erroneous simply because this conclusion goes against Garcia's newly obtained post-trial experts' opinions.  As the trier of fact, it is the trial court that is tasked with determining which, if any, of the experts's opinions to believe.  Likewise, the ultimate issue of whether Garcia was competent to and in fact voluntarily pled guilty was for the trial court to decide—not Garcia's newly hired experts.

¶6.     Because it was certainly within the judge's discretion to reject these new opinions and rely on previous expert testimony and her own in-court observations, we affirm the denial of Garcia's petition for post-conviction relief.  Garcia's plea of guilty to capital murder should not be set aside.

### Background Facts & Procedural History

¶7.     The gruesome facts of Garcia's crime have been previously detailed in *Garcia I*. *Garcia I*, 300 So. 3d at 952-3, 959-60.  As summed up by *Garcia III*,

---

[1] *Doss v. State*, 19 So. 3d 690, 714 (Miss. 2009).

[2] *Id.*

3

Police found five-year-old JT's body in an abandoned trailer. *Garcia I*, 300 So. 3d at 952. She had been sexually assaulted, vaginally and anally, and hanged by the neck. *Id.* Garcia confessed to killing her in the course of raping her. *Id.* at 959. His DNA was found in her vagina and anus. *Id.* at 952. He pled guilty to capital murder and waived jury sentencing. *Id.* at 959-60.

*Garcia III*, 356 So. 3d at 106.

## I. Challenges to Death Sentence

¶8. The trial judge sentenced Garcia to death. Twice, this Court has reviewed the trial court's imposition of the death sentence—once on direct appeal (*Garcia I*), and once by way of Garcia's other PCR petition (*Garcia III*). And both times, we have not disturbed Garcia's death sentence.

¶9. Particularly, in *Garcia I*, this Court made two competency-related rulings.

¶10. First, this Court rejected Garcia's contention that at one point pretrial he had been incompetent due to his anxiety. *Garcia I*, 300 So. 3d at 964-66. The trial court never ruled Garcia had been incompetent. *Id.* at 965. Rather, Garcia's psychological expert, Dr. Richard Storer, had raised concerns about Garcia's anxiety and its impact on his competency. He recommended Garcia be prescribed medication. After Garcia had been medicated for a sufficient time, Dr. Storer reinterviewed Garcia in a courtroom-like atmosphere to gauge Garcia's level of social anxiety and ability to participate at trial. Following that interview, Dr. Storer submitted his final expert report providing his opinion that Garcia was in fact competent. *Id.* at 965-66.

¶11. Second, we held the trial court did not err by finding Garcia had been competent to waive his right to jury sentencing. *Id.* at 967. Instead, the trial judge supported her

4

competency finding "not only by her own observations of Garcia's ability to communicate with counsel and participate in the proceedings against him over the course of more than a year but also by Garcia's own expert." *Id.*

¶12. We also held the aggravating factors supporting the death penalty outweighed the mitigating factors, which included extensive expert testimony by Dr. Storer about Garcia's family and mental-health issues. *Id.* at 981-82.

¶13. In *Garcia III*, this Court ruled that Garcia's PCR petition failed to make a substantial showing that he was entitled to relief from his death sentence. *Garcia III*, 356 So. 3d at 105-106. In particular, we rejected his ineffective-assistance-of-counsel argument, in which Garcia claimed his trial counsel was deficient for not presenting mitigation evidence that Garcia suffered from fetal alcohol syndrome disorder (FASD). *Id.* at 112-15.

## II. Challenge to Guilty Plea

¶14. Because Garcia's present PCR challenged his guilty plea, Garcia filed it directly with the trial court. *Garcia v. State (Garcia II)*, 344 So. 3d 273, 274 (Miss. 2022) (citing Miss. Code Ann. § 99-39-7 (Rev. 2020); *Jackson v. State*, 67 So. 3d 725, 730 (Miss. 2011)). In this petition, Garcia made no mention of FASD. He instead asserted a new supposed mental issue—namely, autism. But just as he did with his recent FASD argument, Garcia claimed his trial counsel was ineffective for not recognizing and apprising the court of his supposed autism. He has apparently jettisoned his supposed FASD. He now claims his previously undiagnosed autism rendered him incompetent and incapable of voluntarily pleading guilty.

¶15. Garcia also challenged his trial counsel's performance as it related to Dr. Storer. In Garcia's view, his trial counsel failed to ensure this expert acted as an "independent defense expert." Ultimately, Garcia charges that his counsel's deficient performance led to him unknowingly and involuntarily pleading guilty.

¶16. Garcia also directly attacked Dr. Storer's expert assistance. He claimed Dr. Storer failed to meet the minimal constitutional requirements for a psychological expert. He also challenged the admissibility of Dr. Storer's expert testimony based on Dr. Storer's courtroom interview, which Garcia characterized as an invalid and unreliable "experiment." In support of his motion, Garcia presented affidavits from two psychological experts—Dr. Jolie Brams and Dr. Robert Stanulis—both of whom evaluated Garcia post-conviction.

### A. Competency Hearing

¶17. Because Garcia's post-conviction counsel challenged Garcia's competency to participate in the PCR proceedings, the trial court held a competency hearing. Dr. Stanulis testified that, in his expert opinion, Garcia was not at present competent because Garcia's "strong symptoms of anxiety" led Garcia to act irrationally. The State's expert, Dr. Amanda Gugliano, also testified. After evaluating Garcia, she gave an expert opinion that Garcia was competent.

¶18. The trial judge ruled Garcia was still competent.

### B. Evidentiary Hearing

¶19. The trial judge then held an evidentiary hearing on Garcia's PCR petition. Both Dr. Brams and Dr. Stanulis testified on behalf of Garcia.

### 1. Dr. Brams

¶20. In Dr. Brams's opinion, Garcia suffers from autism, with symptoms including agoraphobia, strained social interactions, and overwhelming anxiety. Dr. Brams conceded that not every autistic person is incompetent. But in her view, when a person has been diagnosed with autism, it must be determined if his deficits impact his competency. Dr. Brams opined that Garcia's symptoms caused him to make knee-jerk reactions, as opposed to rational decisions, rendering him incompetent.

¶21. Dr. Brams was also highly critical of Dr. Storer's "courtroom situation." In her opinion, Dr. Storer's interview of Garcia in the courtroom in front of others to gauge how Garcia may react during his actual trial was a contrived situation. She went so far as to call Dr. Storer's actions unethical and invalid.

¶22. Dr. Brams was similarly critical of Garcia's trial counsel—whom she never contacted. Rather, based on her interview with Garcia, she concluded Garcia pled guilty because Garcia had perceived his trial counsel had given up on him when counsel encouraged him to plead guilty.

### 2. Dr. Stanulis

¶23. Dr. Stanulis also testified about Garcia's supposed autism and post-traumatic stress disorder, which is an anxiety disorder. In Dr. Stanulis's opinion, Garcia was not competent to plead guilty. Further, he suggested his guilty plea was not voluntary. Instead, Garcia had pled guilty based on pressure by his attorneys and to get rid of his anxiety. Also, in his view,

7

Garcia had not been given enough time to review Dr. Storer's report and other discovery before pleading guilty.

### 3. Garcia's Trial Counsel

¶24. After Garcia's evidentiary presentation, the State called Garcia's lead trial counsel, Angela Broun Blackwell. Blackwell described Dr. Brams's report regarding Garcia's interactions with trial counsel as "completely inaccurate." Blackwell testified she had met with Garcia regularly leading up to his trial. During these meetings, contrary to Dr. Brams's suggestion, Garcia did not try to avoid long conversations. Nor did trial counsel try to build Garcia's case without Garcia's input. While Garcia did get nervous in the courtroom, Blackwell never observed Garcia shutting down in front of counsel in the way Dr. Brams claimed. Instead, based on her interactions with Garcia, Blackwell believed Garcia's communication with his trial team was rational and that he understood the ramifications of his guilty plea at the time.

¶25. Also, contrary to Dr. Stanulis's report, Blackwell testified her team gave Garcia all meaningful discovery. And they never pushed Garcia to plead guilty or waive his right to jury sentencing. Blackwell testified she did recommend Garcia plead guilty. But this was after several unfavorable evidentiary rulings. Because of the strong evidence of guilt, including DNA evidence that placed Garcia's semen in the victim's vagina and anus, and internet searches on Garcia's Xbox for child-rape pornography, Blackwell advised Garcia that his admitting guilt and taking responsibility might be Garcia's best chance at avoiding

8

a death sentence. And when Garcia did decide to plead guilty, it was not a knee-jerk decision. Instead, Garcia was calm and matter-of-fact during his plea colloquy.

### III. Trial Court's Ruling

¶26. Following the hearing, the trial judge denied Garcia's petition. She issued a sixty-eight-page order detailing her reasons for denial.

¶27. Relevant to this appeal,[3] the trial judge first ruled that Garcia's competency-based claims were barred by res judicata. The trial judge had ruled Garcia was competent in January 2017—right before he pled guilty and waived his right to jury sentencing. This ruling—which this Court affirmed on Garcia's direct appeal—was based "on the same evidence which still exists after the [PCR] evidentiary hearing." Garcia presented nothing new at the PCR hearing that changed the competency determination.

¶28. Res judicata aside, the trial court determined there was no real dispute that Garcia had been competent to plead guilty under the *Dusky* standard.[4] Dr. Brams was the only one who

[3] In his PCR petition, Garcia had also asserted he was insane at the time he raped and murdered JT and that he should not be subjected to the death penalty due to his severe mental illness. The trial court rejected both assertions. And Garcia has not raised either issue on appeal.

[4] *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (providing the test for competency as "whether [t]he [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him"). On appeal, Garcia suggests a different standard applied because this Court did not adopt *Dusky* until after Garcia pled guilty. This argument is clearly waived, having not been raised before the trial court. *Gardner v. State*, 531 So. 2d 805, 809 (Miss. 1988). Further, at the evidentiary hearing, both Garcia's experts testified their expert opinions that Garcia had not been competent were based on *Dusky*'s requirements. And in her final order, the trial judge based her competency ruling on the three requirements of *Dusky*. While Garcia insists he was incompetent, he does not raise as an issue on appeal that the trial judge erred

9

opined Garcia did not have the ability to consult with trial counsel—an assertion Garcia's trial counsel refuted. Further, Garcia's PCR counsel conceded Garcia currently was able to consult with his attorneys. All experts agreed—and the record supported—that Garcia had a factual understanding of the trial and post-conviction proceedings. Garcia did present expert testimony that Garcia lacked a rational understanding of the proceedings. But the opinions were based on Garcia's autism-induced anxiety. Garcia's anxiety was the exact issue Dr. Storer had been concerned with pretrial. So Garcia's post-conviction expert testimony presented nothing new.

¶29. As for Dr. Stanulis's assertion that Garcia had not been given enough time to process Dr. Storer's expert report before he pled guilty, the trial judge ruled that the record contradicted this. Garcia had been at the competency hearing. He testified that he had read and reviewed the report before he pled guilty.

¶30. Finally, the trial judge found no merit to Dr. Brams's claim that Dr. Storer had conducted an unethical "experiment" when he interviewed Garcia in a courtroom full of people before the final competency ruling.

¶31. Ultimately, in the trial court's view, it had been presented a simple battle of experts, in which Garcia's PCR experts's opinions lacked actual record support. In the end, Garcia presented no credible evidence that he was incapable of making a rational decision regarding his guilty plea. Thus, he failed to prove he was entitled to relief from his guilty plea based on incompetency.

---

by applying the wrong standard.

10

¶32. Next, the trial judge addressed Garcia's ineffective-assistance-of-counsel claims.

¶33. The trial court determined that Garcia had offered nothing more than his bare assertions that trial counsel had pressured him into pleading guilty. And these bare assertions were not enough to overcome the presumption that his guilty plea was voluntary.

¶34. Similarly, the trial court found nothing in the record supported Garcia's assertion that his trial counsel allowed Dr. Storer to morph from independent expert to the court's expert. Blackwell testified that she selected Dr. Storer as Garcia's defense expert. And Dr. Storer became an integral part of Garcia's defense team, testifying as Garcia's primary mitigation witness. The trial court emphasized that *Ake v. Oklahoma*[5] entitled Garcia to a competent and qualified expert—but not necessarily a *favorable* mental-health evaluation.[6] And Dr. Storer had been competent and qualified.

¶35. Garcia bore the burden to prove by a preponderance of the evidence that his guilty plea should be set aside.[7] Because the trial judge determined Garcia failed in this burden, she denied him any relief.

### Appellate Issues & Standard of Review

¶36. Garcia timely appealed. This Court's standard of review of the trial judge's judgment is well-established:

---

[5] *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985).

[6] *Jordan v. State*, 912 So. 2d 800, 818 (Miss. 2005) (citing *Ake*, 470 U.S. at 83; *Jackson v. State*, 860 So. 2d 653, 669 (Miss. 2003).

[7] *Loden v. State*, 971 So. 2d 548, 573 (Miss. 2007) (citing Miss. Code Ann. § 99-39-23(7) (Rev. 2007); *Lambert v. State*, 941 So. 2d 804, 811 (Miss. 2006)).

When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be *clearly erroneous*. In making that determination, this Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact. That includes deference to the circuit judge as the sole authority for determining credibility of the witnesses.

*Loden v. State*, 971 So. 2d 548, 572-73 (Miss. 2007) (quotations and citations omitted).

¶37. Garcia claims the trial court made six errors:

(1) The trial court failed to address the expert testimony showing Garcia did not plead guilty voluntarily.

(2) The trial court erred in continuing to rely on an unreliable psychological evaluation.

(3) Garcia was incompetent to plead guilty.

(4) Garcia's defense team's ineffectiveness rendered his plea involuntary.

(5) Garcia was deprived of expert assistance within the minimum requirements of *Ake v. Oklahoma*.

(6) In the alternative, even if petitioner was competent, his trial counsel was ineffective in preparing him to decide whether to plead guilty.

But after review of the entire record and accepting all evidence supporting the trial judge's decisions and credibility determinations, Garcia has failed to show the trial judge erred.

**Discussion**

I. **The trial court did not fail to address Garcia's expert testimony.**

¶38. All of Garcia's issues ultimately center on trial counsel's and Dr. Storer's alleged failure to recognize he had autism—an impairment he now claims rendered him incompetent and incapable of pleading guilty voluntarily.

12

¶39.    Garcia's first claim specifically touches on this.  He insists the trial court failed to address his experts' testimony that he as incapable of pleading guilty voluntarily because of his autism and other mental and psychological impairments.  As support, Garcia repeatedly asserts the Dr. Brams's and Dr. Stanulis's expert testimony was "uncontradicted."  But this pitch is contradicted by the record.

¶40.    When examining a petition for post-conviction relief, the trial court must examine the underlying record.  Miss. Code Ann. § 99-39-11(1), (2) (Rev. 2020).  While Dr. Storer did not testify at the PCR evidentiary hearing, his expert report, pretrial testimony, and mitigation testimony are part of the record the trial court considered.  The same is true for Dr. Gugliano's testimony at the PCR competency hearing.  Further, Blackwell's testimony contradicted several of the factual assumptions underlying both Dr. Brams's and Dr. Stanulis's expert opinions.

¶41.    So it is disingenuous to say the trial judge was confronted with uncontradicted expert testimony.  In truth, she was faced with competing experts.  And it was the judge's role—and her role alone—to determine whose opinions were more credible.  *Doss*, 19 So. 3d at 714. The trial judge found Dr. Gugliano's and Dr. Storer's expert opinions that Garcia had been competent were supported by the record.  She found them more compelling than Garcia's new PCR experts whose opinions the record contradicts.  Dr. Gugliano's and Dr. Storer's opinions were also consistent with the trial judge's own observations of Garcia.  Because the record reasonably supports the trial judge's conclusions, she did not err by addressing Garcia's PCR experts' testimony.

¶42. As part of this argument, Garcia insists that being competent to plead guilty is not the same thing as pleading guilty voluntarily. And he accuses the trial judge of conflating the two. He claims the trial court "failed to separate its analysis of the voluntariness of Mr. Garcia's plea from its examination of his competence to plead." This issue is wholly without merit.

¶43. In truth, it was Garcia who intertwined the competency and voluntariness issues. In his PCR petition, he expressly asserted that his "lack of competency *resulted in* his open guilty plea to capital murder not being made knowingly, intelligently, and voluntarily." (Emphasis added.) So, on these facts, the trial court did not err by ruling that *because* he was competent his claim he did not knowingly, intelligently, and voluntarily pleading guilty also fails.

¶44. Moreover, the trial court *did* address Garcia's assertion that his autism essentially coerced him into pleading guilty. The trial judge rejected Dr. Brams's expert opinion that Garcia's decision to plead guilty had been a knee-jerk reaction due to anxiety. It was at odds with the judge's own observations and interactions with Garcia leading to his decision to plead guilty. And it was completely contradicted by his attorney Blackwell's testimony.

¶45. The trial record supports the trial judge's acceptance of Garcia's voluntary guilty plea. When Garcia announced he wanted to plead guilty, the trial judge did not immediately accept his plea. Instead, she ordered him to wait a day. She wanted him to confer with counsel and to consider the ramifications of his decision. Only after granting him time to reflect on the consequences of pleading guilty did she accept Garcia's guilty plea.

¶46. Garcia had the burden to prove his guilty plea was not voluntary. ***Gardner v. State***, 531 So. 2d 805, 810 (Miss. 1988). And the record supports the trial court's conclusion that Garcia failed in his burden on this issue.

> **II.      The trial court did not err by continuing to rely on Dr. Storer's expert opinion.**

¶47. Garcia next contends the trial judge erred by continuing to rely on Dr. Storer—specifically, on Dr. Storer's pretrial evaluation of Garcia's anxiety level in the simulated courtroom situation.

¶48. Garcia refers to Dr. Storer's courtroom interview as an "experiment." As he sees it, this evaluation failed under the standard for admission of expert opinions under Mississippi Rule of Evidence 702 and ***Daubert***.[8] He claims the trial court "omits any mention, much less application, of MRE 702 or the ***Daubert*** standard." But what he misses in this new argument is that admissibility of Dr. Storer's expert report under the rules of evidence was simply not at issue in the PCR proceeding.

¶49. For obvious reasons, Garcia did not object at the pretrial hearing to the submission of his own expert's report or his own expert's qualifications, so this issue is procedurally barred. ***Willie v. State***, 204 So. 3d 1268, 1274 (Miss. 2016). Further, Garcia's voluntary guilty plea waived all evidentiary issues. ***Jefferson v. State***, 556 So. 2d 1016, 1019 (Miss. 1989). So the trial court did not err by not addressing Garcia's Rule 702 and ***Daubert*** argument.

---

[8] ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In ***Mississippi Transportation Commission v. McLemore***, 863 So. 2d 31, 35 (Miss. 2003), this Court adopted as the test for determining the admissibility of expert witness testimony the rule stated in ***Daubert***, as modified in ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

¶50.   But the trial court *did* address—and reject—Garcia's underlying argument that Dr. Storer's courtroom evaluation was inappropriate.  Garcia asserts this conclusion was error because Dr. Brams testified Dr. Storer's method was invalid and unreliable.  In other words, Garcia argues the judge erred because she agreed with his pretrial expert and did not buy what his post-trial expert was saying.

¶51.   But the trial court was not bound to accept Dr. Brams's testimony about Dr. Storer's methodology.  It is without questions that "[p]sychiatry is not . . . an exact science[.]" *Ake*, 470 U.S. at 81.  Indeed, "psychiatrists disagree widely and frequently on what constitutes mental illness[ and] on the appropriate diagnosis to be attached to given behavior and symptoms . . . ." *Id.*  As this Court has acknowledged, when it comes to psychological experts, no "methodology, approach, or understanding of [an] issue is infallible." *Doss*, 19 So. 3d at 714.  And "[a]s the United States Supreme Court has noted, 'the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law.'" *Id.* (quoting *Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)).  "While expert opinions are helpful and insightful, the ultimate decision of . . . [competency] is not committed to the experts, but to the trier of fact." *Id.*

¶52.   And here it was the trial judge who sat as trier of fact.  She assessed the totality of the evidence as well as the credibility of witnesses.  *Id.* The trial court rejected much of Dr. Brams's expert conclusions because the record *did not* support them.  In some cases, the

16

record directly contradicted them. The judge simply carried out her role as the trier of fact when tasked with the ultimate issue of Garcia's competency. Doing so was not error.

### III. The trial court did not err by ruling Garcia was competent to plead guilty.

¶53. Garcia's third issue on appeal is a repackaging of his second issue. He claims the trial court's January 2017 ruling on Garcia's competency was made without a sufficient, reliable diagnosis from Dr. Storer.

¶54. First, this claim is barred by res judicata. Under the PCR statute, "[t]he doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." Miss. Code Ann. § 99-39-21(3) (Rev. 2020). This bar applies to death-penalty PCR petitions. *Lockett v. State*, 614 So. 2d 888, 893 (Miss. 1992) (citing *Irving v. State*, 498 So. 2d 305 (Miss. 1986); *Evans v. State*, 485 So. 2d 276 (Miss. 1986)).

¶55. This Court has already reviewed Garcia's competency. *Garcia I*, 300 So. 3d at 964-68. On direct appeal of his sentence, Garcia challenged his competency to waive jury sentencing. *Id.* He waived this right the day before he pled guilty. *Id.* at 958-59. And the trial judge accepted both Garcia's guilty plea and waiver of his right to jury sentencing after she found Garcia competent in January 2017. In other words, while the direct appeal challenged his competency to waive jury sentencing and this PCR petition challenged his competency to plead guilty, we are talking about the *same* competency ruling. And in *Garcia I*, this Court addressed—and found no error—in that competency ruling. *Id.* at 966-69.

¶56. Garcia still disagrees. He says no bar applies because the particular competency issue he raises in his PCR petition was not addressed by this Court in **Garcia I**—namely, that Dr. Storer's expert opinion was unreliable because it failed to address Garcia's autism and its impact on Garcia's competency. To that end, despite finding this issue barred, the trial court did alternatively address the merits of Garcia's competency challenge. But the trial court concluded that Garcia's PCR experts' opinions presented nothing new by diagnosing Garcia with autism. Both experts agreed the main presenting symptom of Garcia's autism was high social anxiety. As the trial court pointed out, this is the *very same concern* Dr. Storer presented pretrial in his expert report. So despite Garcia's contention, Dr. Storer had not "misdiagnosed" Garcia.

¶57. After considering Garcia's PCR evidence alongside the trial record, the trial judge found Garcia had not carried his burden to show he was incapable of making a rational decision to enter his guilty plea. *See* **Pitchford v. State**, 240 So. 3d 1061, 1067 (Miss. 2017) ("The standard for competency to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and 'has a rational as well as a factual understanding of the proceedings against him.'" (quoting **Gammage v. State**, 510 So. 2d 802, 803 (Miss. 1987))); **Dusky v. United States**, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). The record supports the trial court's ruling. As discussed previously, it was the trial judge's role as trier of fact to assess what weight and credibility to give Garcia's PCR experts' opinions. The trial judge did not have to reject Dr. Storer's report simply because Dr. Brams said the court should. Because the record supports

18

the trial court's competency ruling, the trial court did not err by denying Garcia's competency-based request to set aside his guilty plea.

### IV. Garcia's trial counsel was not constitutionally ineffective for not calling attention to Garcia's autism.

¶58. Garcia's next argument follows a similar pattern as the claim he made in *Garcia III*—his death-sentence PCR. In that petition, Garcia argued "his trial counsel was ineffective for not pursuing and presenting evidence of fetal alcohol syndrome disorder or fetal alcohol spectrum disorder (FASD) as a mitigating factor." *Garcia III*, 356 So. 3d at 112. Garcia suggested that, based on his childhood medical records, his trial counsel should have suspected he suffered from FASD and should have retained a mitigation expert that specializes in FASD. This Court rejected that argument. We held that trial counsel's mitigation investigation was not deficient for not pursuing a *possible* FASD diagnosis. *Id.* at 115.

¶59. Turning to the present PCR petition, Garcia argues his trial counsel's assistance was constitutionally ineffective under *Strickland*.[9] He insists it should have led to her recognizing the "red flags" in Garcia's medical records pointing to autism. As he did with his similar FASD-based claim in his last PCR, Garcia now argues his trial counsel *should have* recognized from Garcia's medical records that Garcia was actually autistic, even though the psychological expert hired to review those records did not. Garcia also suggests his trial

---

[9] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*'s two-prong test, "the defendant must [first] show that counsel's performance was deficient." *Id.* at 687. If the defendant establishes deficiency, next, "the defendant must show that the deficient performance prejudiced the defense." *Id.*

counsel failed to ensure Dr. Storer appropriately examined Garcia and that Dr. Storer understood he was the defense's expert, not the court's. This last claim—about Dr. Storer's role will be addressed in the next section.

¶60.   As to Garcia's other claims, in *Garcia III*, this Court rejected the argument that to provide constitutionally sufficient assistance, trial counsel must always go behind the retained psychological expert and question whether there are additional diagnoses defense counsel should pursue. *Garcia III*, 356 So. 3d at 112-13. This Court recognized "there is a critical interrelation between expert psychiatric assistance and minimally effective representation." *Id.* at 112 (quoting *State v. Tokman*, 564 So. 2d 1339, 1343 (Miss. 1990)). But, "when 'defense counsel has sought and acquired a psychological evaluation of the defendant . . . , counsel generally will not be held ineffective for failure to request additional testing'"—or, in this case, for failure to question the expert's methodology. *Id.* (quoting *Ross v. State*, 954 So. 2d 968, 1005 (Miss. 2007)).

¶61.   Here, Garcia failed to show his trial counsel's performance when determining competency was deficient. Trial counsel did not specifically pursue and present an autism diagnosis. But she *was* concerned about Garcia's mental-health issues—including his social anxiety—and their potential impact on Garcia's competency. Garcia's counsel retained Dr. Storer, a seasoned psychologist who has provided expert psychological assistance in *dozens* of death-penalty cases. Moreover, counsel retained Dr. Storer not just for mitigation purposes but also to evaluate Garcia's potential incompetency. And trial counsel apprised

20

the trial court of all anxiety-related episodes and medication problems. So, contrary to Garcia's assertion, his attorney did advocate for him on this issue.

¶62. Therefore, the trial court did not err by rejecting Garcia's ineffective-assistance challenge to his counsel's not discovering and making the court aware of a potential autism diagnosis.

## V. Garcia was not deprived of expert assistance within the minimum requirements of *Ake*.

¶63. Garcia next challenges Dr. Storer's assistance directly. Garcia claims his due process rights were violated because Dr. Storer did not provide the minimal expert psychological assistance guaranteed by *Ake*.

¶64. Garcia bases this on his assertion that Dr. Storer "did not know that he was retained to assist the defendant." Garcia cites Dr. Storer's affidavit in which he explained he had been retained by the defense as an evaluating expert, as opposed to a consulting expert. As an evaluating expert, Dr. Storer's stated role was to evaluate Garcia's competency and mental health. He believed he was tasked with giving an "unbiased and nonpartisan" presentation of his findings to the trier of fact.[10] Garcia latches on Dr. Storer's explanation that an evaluating expert is an "expert for the Court." He says this is proof that Dr. Storer believed it was his role to assist only the trial court, not Garcia. And he makes a *Strickland*-based argument claiming his lawyer failed to ensure Dr. Storer knew his proper role.

---

[10] By contrast, a consulting expert, Dr. Storer explained, does not testify or otherwise provide an expert opinion to assist the trier of fact. Instead, a consulting expert merely "advise[s] the retaining party on existing and potential psychological information, its strengths and weaknesses, [and] how it might be used and how it might be challenged."

¶65.    But the record debunks this argument and conflicts with such an interpretation of Dr. Storer's affidavit.  As Blackwell testified, she specifically selected Dr. Storer as the defense's psychological expert.  She testified Dr. Storer worked closely with Garcia's defense counsel and mitigation expert.  And Dr. Storer served as Garcia's primary mitigation witness during the sentencing trial.

¶66.    Further, contrary to Garcia's assertions, Dr. Storer's evaluation and testimony met the requirements of *Ake*.  In *Ake*, the Supreme Court described the role a psychological expert plays in assisting the defendant:

> In this role, psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question. They know the probative questions to ask of the opposing party's psychiatrists and how to interpret their answers. Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, psychiatrists can identify the "elusive and often deceptive" symptoms of insanity,  and tell the jury why their observations are relevant. Further, where permitted by evidentiary rules, psychiatrists can translate a medical diagnosis into language that will assist the trier of fact, and therefore offer evidence in a form that has meaning for the task at hand. Through this process of investigation, interpretation, and testimony, psychiatrists ideally assist lay jurors, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense.

*Ake*, 470 U.S. at 80-81 (citation omitted).  As Dr. Storer's affidavit explained, he clearly fulfilled this role.  He evaluated Garcia and presented his expert opinions to the trial judge, who sat as the trier of fact.  So Garcia's *Ake*-based claim fails.  The entire point of an expert witness is to assist the trier of fact.  Indeed, it is one of the express qualifications to be an

expert witness. Miss. R. Evid. 702(a) ("A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise *if* . . . the expert's scientific, technical, or other specialized knowledge *will help the trier of fact* to understand the evidence or to determine a fact in issue . . . ." (emphasis added)).

¶67. Interestingly, in his PCR petition, Garcia continually suggests Dr. Storer was not a sufficiently "independent" expert—presumably meaning independent of the trial court. But Dr. Storer's affidavit actually supports his independence. His affidavit explained, as an evaluating expert, Dr. Storer strove to follow the forensic-psychology guidelines and present an "unbiased and nonpartisan" expert opinion based on the facts.

¶68. Garcia had no right to an expert who would, at his attorney's insistence, conjure up a mental health disorder, or otherwise simply fashion an opinion to lend him a helping hand in defense or mitigation. As this Court has said, "[a] defendant is not entitled to a favorable mental health evaluation, but is instead entitled to a competent psychiatrist and an appropriate examination." *Jordan v. State*, 912 So. 2d 800, 818 (Miss. 2005) (citing *Ake*, 470 U.S. at 83; *Jackson v. State*, 860 So. 2d 653, 669 (Miss. 2003). The record supports the trial court's conclusion that Garcia received the assistance of a competent psychiatrist, who conducted an appropriate examination. Thus, the trial court did not err by denying Garcia PCR relief on this basis.

¶69. For the same reasons, the trial court did not err by denying Garcia's ineffective-assistance-of-counsel claim, which alleged his trial counsel was deficient for retaining and relying on Dr. Storer's expert assistance.

## VI.    Trial counsel was not constitutionally ineffective in preparing Garcia to plead guilty.

¶70.    Finally, Garcia claims his trial counsel was constitutionally ineffective because counsel failed to provide him with meaningful discovery.  Garcia says this impaired his ability to make an informed decision to plead guilty.  But as the State points out, Garcia did not raise this issue in his PCR petition.  So he may not raise it now.  ***Gardner v. State***, 531 So. 2d at 809 (citing ***Colburn v. State***, 431 So. 2d 1111, 1114 (Miss. 1983)).

¶71.    Aside from this bar, the record cuts against Garcia's assertions.  What Garcia complains about is not receiving a paper copy of the discovery until soon before the December 2016 omnibus hearing.  At that pretrial hearing, Garcia conceded there was nothing in the discovery he did not already know about—he just had not received his own physical copy until then.  At the PCR hearing, Blackwell confirmed that her team had met with Garcia regularly leading up to trial.  During those meetings, her team had gone over the discovery with him.  Blackwell did make a strategic decision to withhold some of Garcia's records until after Dr. Storer interviewed him.  But that was to ensure Garcia's answers were based on his own memories and perceptions, not what he had read.  After the interview, Blackwell did provide this information to Garcia.  And before pleading guilty, Garcia acknowledged he had this information.

¶72.    So even if this issue was not waived—as it clearly was—Garcia cannot show counsel's performance was deficient, let alone the deficiency prejudiced him.  Before accepting his guilty plea, the trial court carefully questioned Garcia about his knowledge of

the evidence supporting his guilt, which was overwhelming. This issue is both waived and without merit.

## Conclusion

¶73. After review, the record supports the trial court's conclusion that Garcia was competent, his guilty plea was voluntary, his trial expert was competent and qualified, and his trial counsel's performance was constitutionally effective. We therefore affirm the trial court's denial of Garcia's PCR petition seeking to set aside his guilty plea.

¶74. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**